# Gilkeson, Appellant, *v.* Thompson.

*Equity—Equity pleading—Averments of fact—Conclusions from facts.*

An equity pleader need make no formal averment of a conclusion if he distinctly avers facts from which the conclusion must follow; but if he avers an argumentative conclusion without alleging the facts to support it, his bill is demurrable.

On a bill in equity to compel the reassignment of a mortgage, the plaintiff averred that a decedent, of whom he was next of kin and heir, had been induced to assign the mortgage to two persons through fraud and duress, and that their assignees had in turn assigned the mortgage to a corporation, one of the defendants, and that the second assignment had been procured by one who was a stockholder, director and solicitor of the corporation. Then followed the averment that the corporation "had therefore full and complete knowledge of the whole transaction of the said assignments." There was no averment that the solicitor and director knew of the alleged fraud or if he did, that he had imparted the knowledge to the company when he was acting for it in procuring the assignment to it. *Held,* that the bill was demurrable.

To visit the principal with constructive notice, it is necessary that the knowledge of the agent or attorney should be gained in the course of the same transaction in which he is employed by his client.

*Decedents' estates—Jurisdiction—Equity—Act of May 19, 1874, P. L. 206.*

A bill in equity by an heir and next of kin to secure a reassignment of a mortgage alleged to have been fraudulently procured from the decedent cannot be maintained where it appears from the bill that a paper purporting to be a will had been admitted to probate, and that plaintiff was conducting a contest not yet terminated to have the alleged will set aside. Plaintiff's remedy in such a case is under the Act of May 19, 1874, P. L. 206, which gives the orphans' courts power to protect property over which they may have jurisdiction.

*Mortgage—Assignment—Fraud—Parties—Equity.*

A bill in equity by the next of kin of a decedent to secure the reassignment of a mortgage averred that the decedent in his lifetime had assigned land to another and taken from his grantee a purchase money mortgage, and that the defendants by fraud and duress had procured from the decedent an assignment of the mortgage. The grantee of the land subsequently conveyed

the land to other parties, who were not made parties to the bill. A supplemental or amended bill was afterward filed in which it was averred that the grantee named in the deed from decedent was a fictitious person, and it was prayed that the mortgage be declared null and void. The parties to whom the alleged fictitious grantee had conveyed were not made parties to the amended bill. *Held*, that the amended bill was demurrable for insufficiency of parties, inasmuch as the anamolous result might arise in an ejectment against such persons, that their title would stand, though the mortgage against the property given for the payment of the purchase money by their own grantor, subject to which they took it, and against which they had no defense, had fallen.

Argued Oct. 28, 1904. Appeal, No. 160, Oct. T., 1904, by plaintiff, from decree of C. P. No. 3, Allegheny Co., Aug. T., 1904, No. 327, dismissing bill in equity in case of Findley Gilkeson v. Euphemia Thompson, Rebecca Blanche Thompson, Mt. Washington Savings & Trust Company and Andrew G. Smith, Executor of John Long, deceased. Before MITCHELL, C. J., DEAN, FELL, BROWN, POTTER and THOMPSON, JJ. Affirmed.

Bill in equity to compel the reassignment of a mortgage. Before EVANS, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in dismissing the bill.

*Edwin W. Smith*, of *Reed, Smith, Shaw & Beal*, with him *Alexander Gilfillan*, for appellant.—The trust company was by implication charged with notice of the whole transaction: Earnest v. Hoskins, 100 Pa. 551.

The mortgage made by a fictitious person was null and void: 2 Blackstone, p. 295; Fallon's Pa. Law of Conveyancing, sec. 122; Morris v. Stephens, 46 Pa. 200; Douthitt v. Stinson, 63 Mo. 268; Weihl v. Robertson, 97 Tenn. 458 (37 S. W. Repr. 274); David v. Williamsburgh City Fire Ins. Co., 83 N. Y. 265; Barr v. Schroeder, 32 Cal. 609; Muskingum Valley Turnpike Co. v. Ward, 13 Ohio, 120; Hulick v. Scovil, 9 Ill. 159; Van Amringe v. Morton, 4 Wharton, 382; Bennett v. Farnell, 1 Camp. 130.

Equity did have jurisdiction to enjoin the foreclosure of the mortgage, or to set it aside, or to set aside the assignment of it:

Mortland v. Mortland, 151 Pa. 593 ; Pomeroy's Equity Juris-
prudence, sec. 913.

It has been held that a suit in equity to establish an indebt-
edness of an estate to the plaintiffs, who are executors, may be
maintained because they cannot bring an action at law : Glover
v. Patten, 165 U. S. 394 (17 Sup. Ct. Repr. 411).

Long, by his assignment of the bond and mortgage to the
Thompsons, did not warrant its validity in the hands of the
trust company : Jones on Mortgages, sec. 824 ; Littauer v.
Goldman, 72 N. Y. 506.

Even if there were such warranty to the Thompsons, it could
not inure to the benefit of the trust company.   There is no
privity of contract between Long and the trust company :
Moser v. Hoch, 3 Pa. 230.

*M. W. Acheson, Jr.,* of *Patterson, Sterrett & Acheson,* for ap-
pellees.—While as suggested by appellant his allegations, in
view of the demurrer, are to be taken as true, the demurrer does
not of course admit argumentative conclusions of the bill :
Getty v. Penna. Institution for Blind, 194, Pa. 571, 575.

In order to charge the principal with notice by reason of no-
tice to or knowledge of the agent, it must appear that the agent
acquired the notice, knowledge or information while acting for
the principal in the very matter in respect of which it is sought
to visit the principal with constructive notice : Barbour v.
Wiehle, 116 Pa. 308; Meehan v. Williams, 48 Pa. 238, 242;
Houseman v. Girard Mut. Bldg. & Loan Ass'n, 81 Pa. 256,
262; Lohr v. Philipsburg Boro., 156 Pa. 246, 248; Bangor,
etc., Ry. Co. v. Slate Co., 203 Pa. 6 ; Hood v. Fahnestock, 8
Watts, 489, 492; Custer v. Tompkins County Bank, 9 Pa. 27 ;
Bank of Pittsburg v. Whitehead, Sproul & Co., 10 Watts, 397.

While the assignee of a nonnegotiable chose in action takes
title thereto subject to equities, it is subject only to equities of
the obligor or debtor, and is not subject to the secret equities
of anybody else : Taylor v. Gitt, 10 Pa. 428; Mott v. Clark, 9
Pa. 399.

One who assigns a chose in action impliedly warrants its
genuineness, and neither he nor a volunteer under him will be
heard to assert the contrary as against an innocent purchaser :
Flynn v. Allen, 57 Pa. 482.

The trust company was not by implication charged with notice: Stevens v. North Pa. Coal Co., 35 Pa. 265; Davidson v. Little, 22 Pa. 245.

The amendment was fatally defective for want of parties: Wilson v. White, 84 Cal. 239 (24 Pac. Repr. 114).

OPINION BY MR. JUSTICE BROWN, December 31, 1904:

By his original bill the appellant asked that the Mt. Washington Savings and Trust Company be restrained from collecting a certain mortgage of which it was the holder, and that a decree be made directing it to reassign the same and the accompanying bond to some trustee for the estate of John Long, deceased. These had been given to Long to secure the payment of the balance of purchase money for land which he had sold to one O. P. Phillips. The appellant, as the next of kin and heir at law of Long, alleged, as grounds for the relief sought, that the decedent had been induced to assign the bond and mortgage to Euphemia and Rebecca Blanche Thompson through fraud and duress at a time when he was so enfeebled by his advanced age and physical condition as not to be capable of transacting business and of knowing the purport and meaning of the assignment; and a further averment was that Andrew G. Smith, having knowledge of this assignment, afterwards procured the one from the Thompsons to the Mt. Washington Savings and Trust Company, of which he was one of the principal organizers, a director, a large stockholder and solicitor, and its representative in the assignment to it. There is then an argumentative allegation that "the said Mt. Washington Savings and Trust Company had, therefore, full and complete knowledge of the whole transaction of the said assignments."

A demurrer was filed to the bill by the trust company, which, while admitting its distinct allegation, did not admit the argumentative conclusions in it: Getty et al. v. Pennsylvania Institution for Instruction of the Blind, 194 Pa. 571. It is admitted by counsel for appellant that the bill does not charge the trust company with direct notice of the fraud alleged to have been practiced on Long, but it is insisted that the deduction just quoted is to be regarded as an admission by the demurrant that it had notice. The deduction would be so re-

garded if, from the averments as to notice, it was the only conclusion to be drawn. But a pleader need make no formal averment of a conclusion if he distinctly avers facts from which it must follow.

The demurrer was sustained, because, though the plaintiff alleged fraud and duress on the part of the Thompsons in procuring the assignment of the mortgage, he did not allege knowledge of the fraud on the part of the trust company, nor by Smith as its agent, but averred only the conclusion of its knowledge. The court might have gone further and properly said that there is not even an averment that Smith knew the assignment was fraudulent and had been procured by duress. The allegation is simply that it had been made with his knowledge ; there is no averment that he knew of the fraud alleged to have been practiced upon the assignor. But if the averments were broad enough to cover such knowledge by him before he acted for the trust company, there is no allegation of knowledge by it brought to it through him when he acted for it in procuring the assignment of the mortgage to it. No matter what he may have known before he acted as its agent in procuring the assignment, such knowledge is not to be imputed to it when he subsequently did act for it, unless the knowledge was reimparted to him as its representative while acting for it. This is the settled law : " To visit the principal with constructive notice, it is necessary that the knowledge of the agent or attorney should be gained in the course of the same transaction in which he is employed by his client : " Hood v. Fahnestock, 8 Watts, 489. Among our many later cases recognizing and enforcing this rule are Houseman v. Girard Mutual Bldg. & Loan Ass'n, 81 Pa. 256 ; Barbour v. Wiehle, 116 Pa. 308, and Lohr v. Philipsburg Borough, 156 Pa. 246. In Houseman v. Girard Mut. Bldg. & Loan Ass'n, supra, it was said by SHARSWOOD, J. : " It is only during the agency that the agent represents, and stands in the shoes of his principal. Notice to him is then notice to his principal. Notice to him twenty-four hours before the relation commenced is no more notice than twenty-four hours after it had ceased would be. Knowledge can be no better than direct actual notice. It was incumbent on the plaintiff to show that the knowledge of the agent, to use the accurate language of one

of our cases, ' was gained in the transaction in which he was employed.' " The first three grounds of demurrer were properly sustained.

The fourth ground of demurrer, not passed upon by the court, is that the bill discloses that the plaintiff had no standing to maintain it. His complaint is as next of kin and heir at law of John Long, deceased, but there is an averment that he died testate and that a paper purporting to be his last will was admitted to probate more than a year before the bill was filed. True, there is an averment that an appeal had been taken by the appellant from the probate, but there is no averment that, if the will should be sustained, he would have any interest in the estate of the testator. If the will stands it is to be assumed, in the absence of any allegation to the contrary, that he has no interest to be protected ; and it is not to be assumed that the will will be set aside. The case of the appellant as presented by him is that of one admittedly having no standing at the time he makes his complaint, but because he hopes for the successful ending of the contest to have the will of his kinsman set aside—in its very nature most uncertain— he asks to be heard. While the failure of the court below to consider the fourth ground of demurrer relieves us from saying anything about it, we are of opinion that if it had been sustained there would not have been error. This is especially true in view of the Act of May 19, 1874, P. L. 206, the seventh section of which provides that the orphans' courts shall have power to prevent by order, in the nature of writs of injunction, acts contrary to law or equity prejudicial to property over which they shall have jurisdiction. Though this jurisdiction for the protection and preservation of property may be concurrent and not exclusive, it is the one to which the appellant ought to have resorted, for there his appeal from the probate of the will was pending, and there, if he was entitled to any relief, it could have been given him by a proper order during the pendency of his appeal, intelligently made by the same court that was to dispose of the appeal. If he were to obtain the decree asked for in the common pleas, and his appeal in the orphans' court should fail, the decree would become a dead letter and the proceedings instituted to procure it would have to be regarded as having been useless and vexatious.

An amendment in the nature of a supplemental bill was filed, in which the appellant alleges that there was no such person as O. P. Phillips, the grantee named in Long's deed and the grantor in the deed to Craig and Glenn ; and the prayer of the amended bill is that the mortgage held by the trust company be declared null and void and that it be restrained from proceeding for the collection of the same.    To this supplemental bill all of the defendants demurred, the fifth ground of demurrer being that the amendment was defective for want of parties. Neither Craig nor Glenn is a party to the original or supplemental bill, and neither would be bound by a decree made. Under his amendment the complainant would wipe out the mortgage, the security for which is the land owned by Craig and Glenn.    If there should be a decree striking down the mortgage, and in an ejectment subsequently brought against Craig and Glenn they should retain the land under a verdict in their favor, there would be, as is well contended by counsel for appellees, the anomalous and astonishing result that their title would stand, though the mortgage against it, given for the payment of the purchase money by their own grantor, subject to which they took it and against which they had no defense, had fallen.    The land would be theirs without paying for it.

The allegations in the amended bill as to notice by the trust company are no stronger than in the original, and we need not discuss this again.    We affirm the decree sustaining the demurrer to the amended or supplemental bill, because, as was very properly said by the learned judge below, " the plaintiff would still be left to try his title as against Glenn and the heirs of Wesley I. Craig by his action of ejectment.    The only effect of the granting of the prayer of the plaintiff in this supplemental bill would be to leave the title to the land in dispute in Glenn and the heirs of Wesley I. Craig free of the incumbrance of the mortgage which their grantor gave.    That would be a foolish thing to do.    If the deed from Long to Phillips was a fraud, then the root of the evil is the outstanding title purporting to be conveyed by that deed, and until that is stricken down no court of equity would interfere with the mortgage in the hands of an innocent purchaser."

Decree affirmed and appeal dismissed at appellant's costs.